IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BONNIE MAGALLON,
on behalf of herself and all
others similarly situated,

        Plaintiff,

   vs.

ROBERT HALF INTERNATIONAL,
INC.,
a foreign corporation,

        Defendant.

Case No. 6:13-cv-01478-AA
OPINION AND ORDER

_____

James A. Francis
John Soumilas
Lauren KW Brennan
Francis & Mailman, PC
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110

Robert S. Sola
8835 SW Canyon Lane, Suite 130
Portland, OR 97225
    Attorneys for plaintiff

Page 1 - OPINION AND ORDER

Adam P. KohSweney
Susannah K. Howard
O'Melveny & Myers LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111

Calvin L. Keith
Sarah J. Crooks
Perkins Coie, LLP
1120 NW Couch Street, 10th Floor
Portland, OR 97209
        Attorneys for defendant


AIKEN, Chief Judge:

    Plaintiff Bonnie Magallon moves for class certification pursuant to Fed. R. Civ. P. 23. Defendant Robert Half International, Inc., opposes plaintiff's motion. For the reasons set forth below, plaintiff's motion is granted.[1]

<u>BACKGROUND</u>

    This action stems from defendant's use of a criminal background report in deciding to reject plaintiff's employment application. Defendant, a professional staffing service company, rejected plaintiff's application because of her criminal history. Plaintiff alleges she and a class of tens of thousands of similarly situated individuals were denied their rights to notice and an opportunity to dispute the information in their reports before defendant took an adverse employment action against them, in

---

    [1] On the same day plaintiff filed her motion for class certification, defendant filed an affirmative motion to deny class certification, as permitted by <u>Vinole v. Countrywide Home Loans, Inc.</u>, 571 F.3d 935, 941 (9th Cir. 2009). Because the class plaintiff seeks to certify is different from the class addressed in defendant's motion to deny class certification, defendant's motion is denied as moot. The court notes, however, it has considered all arguments in briefs connected to both plaintiff's motion and defendant's motion.

violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.

Defendant places professional-level applicants in temporary and permanent jobs through hundreds of local offices across the nation. Its mission is to "[h]elp businesses grow by matching the right talent to their specialized staffing and consulting needs, and build rewarding careers for the professionals [it] place[s.]" www.roberthalf.com/about-us (last accessed Oct. 20, 2015). Individuals seeking work submit an application to defendant. Defendant attempts to match each qualified applicant with a business client seeking someone with the applicant's qualifications to fill a short-term or long-term position.

All applicants must consent to a background report by signing a form acknowledging "RHI will use the information contained in these reports as a factor in determining [their] eligibility for employment." Doc. 33-2 at 2. Defendant does not perform its own background checks; it orders the reports from several different consumer reporting agencies, including General Information Services, Inc. ("GIS"). The background report typically is ordered late in the application process, after the applicant has interviewed and been matched to one or more possible placements. According to defendant's written policies, applicants cannot begin work for a client before a background check is processed unless the client consents to the applicant starting work pending completion of the background check.

Based upon hiring criteria developed by defendant and/or designated by a client, GIS adjudicates an applicant's background report by placing a green, yellow, or red flag on the report.  If the report is marked with a green flag, the applicant is generally eligible to be placed with a client immediately.  Defendant's written policies prescribe the following procedure when a report is marked with a yellow or red flag:

### Pre-Adverse Letter Process

When background check results are returned discrepant or derogatory, the Fair Credit Reporting Act (FCRA) imposes stringent notification requirements before and after making an adverse employment decision.  The pre-adverse letter **must be sent immediately** when a background check is returned with discrepant and/or derogatory results (red or yellow flag).

Doc. 33-3 at 2 (emphasis in original).  The policy also imposes a "10 day waiting period" before an adverse employment action can be based upon the results of the background check, and specifies the pre-adverse letter must be accompanied by a copy of the background report and a written summary of the applicant's rights under the FCRA.[2]  Notwithstanding this written policy, defendant's designated representative, Lyn Irish, testified it is defendant's practice to send the pre-adverse action package only after defendant completes an internal legal review of the background report and determines whether an applicant is "placeable."  Doc. 32-3 at 8, 29.

On August 22, 2011, plaintiff applied for a job through

---

[2] Collectively, this opinion refers to the letter, copy of the report, and summary of rights as the "pre-adverse action package."

defendant's office in Eugene, Oregon.  As part of her initial application, plaintiff disclosed a misdemeanor conviction.  Despite that disclosure, defendant moved forward with the application process.  Plaintiff took a number of tests and defendant checked her references.  Internal notes in defendant's files dated August 25, 2011, state "pending background approval [plaintiff] will start next week."  Doc. 33-5 at 2.  Defendant asserts plaintiff's file should have been put on hold pending legal review immediately after she disclosed her conviction history.  It concedes this policy was not followed in plaintiff's case.

On August 30, 2011, defendant obtained a background report on plaintiff from GIS.  The report, which was marked with a red flag, provided information about the misdemeanor plaintiff had disclosed on her application.  Defendant referred plaintiff's file, including the background report, to internal legal review within a week.  On September 8, 2011, a member of defendant's staff emailed plaintiff requesting more information about the misdemeanor.  Plaintiff responded with additional details the next day.  Plaintiff received neither a pre-adverse action package nor a copy of her background report during the legal review process.

A few days later, defendant determined plaintiff was not placeable.  Plaintiff alleges a member of defendant's staff telephoned her to deliver the news on September 14, 2011.  There is no record defendant ever sent plaintiff a pre-adverse action package, and plaintiff asserts she never received one.  She did contact defendant on September 15, 2011, to request a copy of her

background report.   Plaintiff received a copy of the report on September 22, 2011.

On August 22, 2013, plaintiff filed this action, alleging violations of the FCRA on behalf of herself and a class of similarly situated persons, and seeking statutory damages.  The complaint alleges defendant willfully violated the FCRA by failing to provide plaintiff with a copy her background report until "more than one week after" it took adverse action against her, and only then after she affirmatively requested the report.  Pl.'s Compl. ¶¶ 12, 13.  In the "Class Action Allegations" section, plaintiff alleges "[t]he principal questions are whether RHI violated the FCRA by taking adverse action against Plaintiff and Class members on the basis of information in a consumer report, without first providing a copy of the report and the written description of FCRA rights to those persons; and whether those violations were willful."  Id. ¶ 26.

Over the next two years, the parties engaged in extensive class certification discovery.  On July 20, 2015, they filed simultaneous motions on class certification.  Plaintiff asks this court to certify the class (doc. 31), while defendant asks it to deny class certification (doc. 34).

<u>STANDARD OF REVIEW</u>

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S. Ct. 2541, 2550 (2011) (citation and quotation marks omitted).  "In order to

Page 6 - OPINION AND ORDER

justify a departure from that rule, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Id. (citation and quotation marks omitted).

"Class certification is proper if plaintiffs show that they meet the requirements of Fed. R. Civ. P. 23(a) and also come within one of the provisions of 23(b)." Wilcox Dev. Co. v. First Interstate Bank of Or., N.A., 97 F.R.D. 440, 443 (D. Or. 1983). The plaintiff bears the burden of establishing the requirements of Rule 23 are met. Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2001). "A class may only be certified if [the court] is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." Hanon v. Dataproducts Corp., 976 F.2d 497, 509 (9th Cir. 1992) (citations and quotation marks omitted). As such, "district courts [have] broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings." Armstrong v. Davis, 275 F.3d 849, 871 n.28 (9th Cir. 2001), abrogated on other grounds, Johnson v. California, 543 U.S. 499, 504-05 (2005).

Under Rule 23(a), the plaintiff must demonstrate:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Under Rule 23(b), the plaintiff must also prove, in relevant part, that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

"A party seeking class certification must affirmatively demonstrate . . . there are <u>in fact</u> sufficiently numerous parties, common questions of law or fact, etc."  <u>Dukes</u>, 131 S. Ct. at 2551 (emphasis in original).  As a result, a court considering a motion for class certification must probe beyond the pleadings to assess whether the requirements of Rule 23 have been satisfied.  <u>Id.</u>  This analysis frequently "overlap[s] with the merits of plaintiff's underlying claim," because "[t]he class determination generally involves considerations that are enmeshed in the factual and legal questions comprising the plaintiff's cause of action."  <u>Id.</u> at 2551-52 (citation and quotation marks omitted).

<u>DISCUSSION</u>

<u>I. Fair Credit Reporting Act</u>

Plaintiff alleges defendant violated section 1681b(b)(3) of the FCRA.  That section provides:

> [I]n using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates—
>
> (i) a copy of the report; and
>
> (ii) a description in writing of the rights of the consumer under this subchapter[.]

15 U.S.C. § 1681b(b)(3)(A).  In the employment context, the FCRA defines "adverse action" as "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee." Id. § 1681a(k)(1)(B)(ii). The FCRA also defines "adverse action" generally as "an action taken or determination that is . . . made in connection with an application that was made by . . . any consumer . . . and . . . adverse to the interests of the consumer." Id. § 1681a(k)(1)(B)(iv).

The text of the FCRA does not provide any specific timing requirements for the notice; it simply states the employer must provide the notice and related materials "before" taking the adverse action.  Id. § 1681b(b)(3)(A).  Thus, courts interpreting this provision must address two distinct legal questions:  (1) whether an employer's action in a given case constitutes an "adverse action," triggering the notice requirement; and (2) whether the notice was provided a sufficient time "before" the adverse action was taken.  Although very little case law in the Ninth Circuit or the District of Oregon addresses these questions, decisions in other jurisdictions provide some guidance.

With respect to the scope of the term "adverse action," the question is whether the employer has made a "final" — as distinct from preliminary — decision. Moore v. Rite Aid Headquarters Corp., 33 F. Supp. 3d 569, 574 (E.D. Pa. 2014).  Congress could have required notice and a copy of the report within a reasonable time after the adverse action.  Such a requirement still would have helped consumers, who could have taken action to correct

inaccuracies contained in the background reports to avoid similar problems in the future. But Congress chose to require notice <u>before</u> the adverse action, signifying an intent to give applicants the opportunity to change the employer's mind with respect to the current job opportunity. <u>See</u> <u>Brown v. Lowe's Cos., Inc.</u>, 52 F. Supp. 3d 749, 757 (W.D.N.C. 2014) ("It may be inferred from the statutory language that Congress intended to ensure that a potential employee would have the opportunity to address any inaccuracies contained in the consumer report used against him or her during the hiring process.")

In some cases, it will be clear the employer has reached a final decision, either because the employer expressly says so, or because the employer takes some action that ends the hiring process — such as selecting another applicant to fill the position at issue. But "adverse action" does not necessarily require such a clear, formal step. Rather, it occurs whenever "the decision is carried out, . . . is communicated or actually takes effect." <u>Burghy v. Dayton Racquet Club, Inc.</u>, 695 F. Supp. 2d 689, 703 (S.D. Ohio 2010). This does not render every negative employment decision an "adverse action," though. Because the statute "expressly allows for the formulation of an intent to take adverse action" before complying with the notice requirements, merely planning not to hire an applicant because of something in their background report is not itself an adverse action. <u>Obabueki v. Int'l Bus. Machs. Corp.</u>, 145 F. Supp. 2d 371, 392 (S.D.N.Y. 2001).

Page 10 - OPINION AND ORDER

Thus, to comply with the statute, an employer who intends to take adverse action must give the applicant an opportunity to change the employer's mind.  This opportunity must be real; a pro forma period between the preliminary and final decision does not satisfy the statute.  For example, in Moore, the employer sent any applicant whose consumer report showed a criminal history an initial notice letter explaining the report "may result in your not being offered the job for which you are applying" and giving the applicant five days to respond.  33 F. Supp. 3d at 571-72.  The court held the letter did not entitle the employer to dismissal for failure to state a claim because "[a]n employer cannot satisfy § 1681b(b)(3) by formally designating some future point in time as the moment of 'final decision' if, in fact, that decision already has been made."  Id. at 574.

With respect to timing of notice, although the text of the statute does not specify any particular requirement, permitting the employer to "deliver the notice and then take adverse action within seconds" would render the statute's use of "before" meaningless. Johnson v. ADP Screening & Selection Svcs., Inc., 768 F. Supp. 2d 979, 983-84 (D. Minn. 2011).  The "clear purpose" of the pre-adverse action notice requirement is "to afford employees time to discuss reports with employers or otherwise respond before action is taken."  Goode v. LexisNexis Risk & Info. Analytics Grp., Inc., 848 F. Supp. 2d 532, 537 (E.D. Pa. 2012) (quoting Lynne B. Barr & Barbara J. Ellis, The New FCRA:  An Assessment of the First Year, 54 Bus. Law. 1343, 1348 (1999)).

In summary, Congress intended applicants to have a "real opportunity," Goode, 848 F. Supp. 2d at 540, to contest an adverse employment decision based on a consumer report in at least two respects.  First, at the time of the notice, the employer's decision must be sufficiently tentative such that information provided by the employee could affect the final decision.  Second, the applicant must have enough time between the notice and the final decision to meaningfully contest or explain the contents of the report.  With those guiding principles in mind, I turn to the parties' motions regarding class certification.

## II. Class Definition

Defendant urges this court to deny class certification because the "proposed class . . . is based on an entirely different legal theory than the one alleged in the Complaint." Def.'s Opp. to Mot. for Class Cert. at 1.  In her motion for class certification, plaintiff seeks to certify a class composed of

> All natural persons residing in the United States (including territories and other political subdivisions) who: (i) applied for temporary employment placement through RHI, (ii) about whom RHI obtained a consumer report for employment purposes from the General Information Services, Inc., from August 22, 2008, until the present, and (iii) the consumer report contained either a "red flag" or a "yellow flag."

Pl.'s Mot. for Class Cert. at 3.

The "Class Action Allegations" section of the complaint alleges

> The principal questions are whether RHI violated the FCRA by taking adverse action against Plaintiff and Class Members on the basis of information in a consumer report, without first providing a copy of the report and the

Page 12 – OPINION AND ORDER

written description of FCRA rights to those persons; and
whether the violations were willful.

Pl.'s Compl. ¶ 26.

It is unsettled in this circuit to what extent a federal court
is strictly limited by the class definition contained in the
complaint. Grodzitsky v. Am. Honda Motor Co. Inc., No. 2:12-cv-
01142-SVW-PLAx, 2014 WL 718431 at *4 (C.D. Cal. Feb. 19, 2014).
Federal courts are split on this question. Compare In re
Monumental Life Ins. Co., 365 F.3d 408, 414 (5th Cir. 2004)
("[H]olding plaintiffs to the plain language of their definition
would ignore the ongoing refinement and give-and-take inherent in
class action litigation, particularly in the formation of a
workable class definition") with Costelo v. Chertoff, 258 F.R.D.
600, 604-05 (C.D. Cal. 2009) ("The Court is bound to class
definitions provided in the complaint and, absent an amended
complaint, will not consider certification beyond it.")  Courts
generally agree, however, it is permissible to narrow a class
definition to "reflect a sharpening of the issues based on
discovery and other developments in the course of litigation and
settlement negotiations." Beaulieu v. EQ Indus. Svcs., Inc., No.
5:06-CV-00400-BR, 2009 WL 2208131 at *7 (E.D.N.C. Jul. 22, 2009);
see also, e.g., In re Conseco Life Ins. Co. LifeTrend Ins. Sales &
Mktg. Litig., 270 F.R.D. 521, 530 (N.D. Cal. 2010) ("Plaintiffs are
simply narrowing their breach of contract theory at this juncture
based on factual developments that have occurred since the filing
of the complaint.")

Plaintiff's shift from a proposed class composed of all individuals who applied for temporary placement with defendant to one composed of all those about whom defendant obtained a GIS consumer report containing either a red or yellow flag is a permissible narrowing of the broader class proposed in the complaint. Plaintiff could not have known about defendant's internal background report categorization procedures before discovery. Moreover, the use of the red flag/yellow flag designation addresses defendant's concern the class outlined in the complaint was not ascertainable. Def.'s Mot. Deny Class Cert. at 25-26. It is thus appropriate for this court to consider plaintiff's motion for class certification without requiring amendment of the complaint. See Brown v. Hain Celestial Group, Inc., No. C 11-03082 LB, 2014 WL 6483216 at *6 (N.D. Cal. Nov. 18, 2014) (Although "the usual practice . . . is to revise the complaint," to require plaintiffs to "do that here . . . would be wasteful. The court understands the plaintiff['s] motion to be [her] operative request. Judicial efficiency is best served by addressing now the class . . . that motion proposes.")

## III. Class Certification

Defendants contend class certification is inappropriate in this case because plaintiff cannot meet the commonality, typicality, or predominance requirements. I disagree.

### A. Numerosity

Under Fed. R. Civ. P. 23(a), the proposed class must be "so numerous that joinder of all members is impracticable." Fed. R.

Civ. P. 23(a)(1).  "[A]s a rough rule of thumb, approximately forty members is sufficient to satisfy the numerosity requirement." Wilcox, 97 F.R.D. at 443.  Here, plaintiffs do not dispute plaintiff's proposed class numbers in the thousands and thus satisfies the numerosity requirement.  Doc. 35-11 (stipulation). The putative class is sufficiently numerous to satisfy the requirements of Rule 23.

B. Commonality

Fed. R. Civ. P. 23(a) requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  This provision "has been construed permissively [such that a]ll questions of fact and law need not be common to satisfy the rule."  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).  "What matters for class certification is not the raising of common 'questions' — even in droves — but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolutions of the litigation."  Dukes, 131 S. Ct. at 2551 (emphasis in original) (citation, ellipsis and quotation marks omitted).  Plaintiff proposes three questions common to the putative class:  (1) whether defendant's policy and practice of "removing" an applicant from the hiring pool when a background report contains a red or yellow flag is an "adverse action" subject to the FCRA notice requirements; (2) whether defendant's alleged failure to notify class members about the adverse results of their background reports until after internal legal review violated the FCRA notice requirements; and (3) whether any violation of the FCRA was willful.

As a threshold matter, defendant asserts none of these questions are common to the class because some background reports were pulled after applicants — including plaintiff — admitted criminal convictions on their employment applications. According to defendant, any adverse employment decision related to those applicants' background reports is not "based on" the background reports, but on the initial admission. This argument ignores the FCRA's requirement to provide pre-adverse action notice even if an adverse decision is based only "in part" on the report. 15 U.S.C. § 1681b(b)(3)(A). It is undisputed defendant ultimately decided not to hire plaintiff because of her criminal history. According to one of defendant's employees, disclosure of a misdemeanor was not "in and of itself a basis to stop the process" of considering whether to hire plaintiff. Doc. 32-5 at 4. It is also undisputed disclosure of a criminal conviction on the application, under defendant's policy and practice, triggers the order of a background report. Defendant has not explained why it orders background reports on applicants who disclose convictions if any adverse action it takes will be based on the initial disclosure and not at all on the contents of the report. At this juncture, plaintiff has adequately alleged the adverse actions for <u>all</u> putative class members were "based on" the results of their background reports.

### 1. "Removal" from the Hiring Pool During Legal Review

Defendant urges this court to reject plaintiff's first contention — that "removal" from the hiring pool during internal legal review is an adverse action — as a matter of law. Defendant

relies on a number of decisions holding internal legal review is
not an adverse decision under the FCRA even if it delays the
ultimate employment decision. See, e.g., Obabueki, 145 F. Supp. 2d
at 392 ("Holding that an employee may suffer an adverse action as
a result of an internal decision by the employer is akin to finding
that a party's summary judgment motion is denied before the Opinion
is composed and issued, following discussions between the judge and
his law clerk.")

Plaintiff does not dispute the validity of those decisions,
but argues temporary employment is, by nature, different.  In a
traditional search to fill a position, an employer's decision to
internally review a background report with negative results before
sending pre-adverse action notice does not deprive the applicant of
the opportunity to obtain the position.  The process is delayed,
but the position remains unfilled while the legal review takes
place, and the employer may comply with the FCRA by giving the
applicant the opportunity to address any issues with the background
report following that review.  By contrast, plaintiff alleges
defendant does not hold a particular assignment open pending its
internal review process; it simply places another qualified
candidate in the available position.  Thus, plaintiff contends even
if an applicant successfully disputes the information in her
background report and defendant deems her placeable, she has lost
forever the opportunity to be placed in that particular assignment.

This court is not persuaded these distinctions between
temporary and permanent employment, standing alone, render

Page 17 - OPINION AND ORDER

defendant's "removal" of applicants from the hiring pool pending legal review an adverse action.  Although temporary employment is different in that a particular placement is only available for a short window of time, it is also different in that a number of new, short-term placements generally become available after the first placement has been filled.  Plaintiff alleges her application was under legal review for two weeks.  She has not alleged defendant intentionally or unreasonably delayed reviewing her application, and there is evidence in the record defendant was actively considering the effect of her conviction during the review period. Thus, on the facts alleged here, plaintiff has not meaningfully distinguished defendant's legal review process from the internal legal review processes approved in <u>Obabueki</u> and other decisions.[3]

This leaves the possibility the "removal" from the hiring pool was (or at some point became) an adverse action in a given applicant's case because defendant failed to review a background report in a timely fashion, causing the applicant to miss out on

_____

[3] This is not to say "removal" from the hiring pool pending internal legal review <u>never</u> could be an adverse decision.  It might be an adverse action if, for example, a plaintiff introduced evidence a defendant's internal review process was pro forma, serving to rubber stamp the defendant's determination individuals with certain items in their background reports never would be deemed placeable.  It might also be an adverse action if a plaintiff alleged an employer simply shelved applications under cover of legal review while taking no steps to actually review those applications.  But plaintiff has not alleged such facts here; she has, instead, identified legal review as the period during which knowledge of FCRA rights and access to a copy of the background report would permit a class member to make a meaningful difference in defendant's ultimate employment decision.

job placements due to the defendant's unreasonable delay.  This question cannot be answered on a classwide basis, as it would require inquiries into the duration of legal review — and possibly into the job placements missed — in each individual class member's case.  On the facts alleged here, whether "removal" from the hiring pool constituted an adverse action is an individual question, not a class question.

### 2. Failure To Send Adverse Action Packages Until After Internal Review

Defendant contends the second question — whether its alleged practice of waiting to send adverse action packages until after internal review — similarly cannot be resolved on a classwide basis.  It is undisputed defendant's written policy is to send the pre-adverse action package immediately after a background check came back with a red or yellow flag.  Defendant asserts this written policy is facially compliant with the FCRA,[4] and any

---

[4] Several times in its briefs, defendant asserts another federal court has found the background check policies at issue in this case compliant with the FCRA as a matter of law, as though the other decision ought to have some sort of preclusive effect.  But defendant grossly overstates the similarities between the two cases.  In the case on which defendant relies, the plaintiff acknowledged he received a pre-adverse action package including a letter informing him his application had been placed on hold because of information in his background report.  Johnson, 768 F. Supp. 2d at 981.  The letter, which was sent a day after defendant received the completed background report, informed the plaintiff he had ten days to dispute the information in the report.  Fourteen days after defendant initiated the "hold" and send the letter, it sent the plaintiff a letter informing him he had been disqualified.  The court granted defendant's motion to dismiss, reasoning (1) because the "hold" was communicated to plaintiff and he was sent the pre-adverse action package, he had "an opportunity to dispute the report," id. at 983; and (2) fourteen days was ample time, as a matter of law, to address any

alleged failure to follow the policy would have to be determined on an individualized basis for each class member.

Defendant's official representative, however, testified defendant does not follow this policy and instead sends out the pre-adverse action package only after the internal legal review is complete. Doc. 32-3 at 8, 29. Contrary to defendant's assertion, the evidence does not suggest defendant occasionally or even frequently fails to follow its written policies, which would require the court to undertake individualized inquiries to determine whether the policy was followed for a given class member. Rather, there is evidence defendant's actual practice is consistently different from the written policy.

Plaintiff asserts she and the other proposed class members were entitled to a pre-adverse action package and "an opportunity to dispute or otherwise meaningfully participate in the review process" before defendant's legal department "finally determined whether or not they were 'placeable.'" Pl.'s Mot. Class Cert. at 15. Plaintiff thus alleges the "not placeable" decision at the end of defendant's internal legal review is an "adverse action" within the meaning of FCRA — that is, she alleges defendant has made a final decision before sending the pre-adverse action letter notifying an applicant of the 10-day dispute period. Thus, whether defendant's consistent practice with respect to when to send pre-

---

inaccuracies, id. at 984. Here, by contrast, plaintiff alleges (1) she and the class members did not have access to their background reports or know their rights until the review was complete and a decision made; and (2) they have zero days to dispute the contents of the report before that final decision.

adverse action packages to class members violates the FCRA is a question common to all class members.

Some evidence in the record supports plaintiff's allegation the "not placeable" decision is a final decision. Although defendant did not provide plaintiff with a pre-adverse action package during internal legal review, it did ask plaintiff questions about her conviction. The information plaintiff provided ultimately contributed to the determination she was "not placeable," and plaintiff alleges she never was provided a pre-adverse action package after that decision was made. A reasonable factfinder could infer from this evidence the meaningful period within which to dispute the contents of the report is during the internal review process, and that after the "not placeable" decision is made, any opportunity given to an applicant to dispute or explain the contents of the report is illusory. See Manuel v. Wells Fargo Bank, Nat. Ass'n, — F. Supp. 3d —, 2015 WL 4994538 at *12 (E.D. Va. 2015) (whether employer's internal coding of an applicant as ineligible for mortgage loan was "adverse action" under FCRA was question of fact for jury).

### 3. Willfulness

As to willfulness, defendant essentially argues plaintiff has failed to state a claim as to any class member, because plaintiff has not identified any case law or guidance establishing what FCRA requires in the context of an internal legal review by a temporary staffing firm. Because plaintiff seeks statutory rather than actual damages, the FCRA requires her to show defendant acted in

Page 21 – OPINION AND ORDER

"reckless disregard" of its obligations under the statute.  Compare
15 U.S.C. § 1681o (providing for actual damages for negligent
violations of the FCRA) with id. § 1681n(a)(1)(A) (providing for
actual or statutory damages for willful violations of the FCRA);
Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 69-70 (2007)
(interpreting "willful" to require at least "reckless disregard").
This generally requires some indication defendant was on notice its
actions violated the FCRA, and that notice can take the form of on-
point guidance or case law.

    No such authority is necessary here.  Defendant's written
policy on pre-adverse action notice states "[w]hen background
checks results are returned discrepant or derogatory, the Fair
Credit Reporting Act . . . imposes stringent notification
requirements before and after making an adverse employment
decision."  Doc. 33-3 at 2.  It goes on to require, in bold text,
the pre-adverse letter to be sent "immediately" after the
background check comes back with a red or yellow flag.  A
factfinder could infer from this policy defendant knew the FCRA
required it to send the pre-adverse action package at the beginning
of the internal review process, and that its failure to do so
constituted a willful violation of the FCRA.  Accordingly,
plaintiff's claims present common questions of law and fact.

    C. Typicality

    Pursuant to Fed. R. Civ. P. 23(a), "the claims or defenses of
the representative parties [must be] typical of the claims or
defenses of the class." Fed. R. Civ. P. 23(a)(3).  The claims "are

'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020.

Defendant alleges plaintiff's disclosure of her criminal convictions make her claims not typical of the class because any adverse action she suffered was a result of that initial disclosure, not the background report. As explained in Section III.B, supra, defendant has not explained why it orders background reports as a matter of course after an applicant discloses a conviction if it will not be relying in part on those reports when it makes a hiring decision. The fact that a different circumstances may have prompted defendant to order a background report in a given class member's case does not affect whether defendant complied with the FCRA after the background report was ordered. See Robidoux v. Celani, 987 F.2d 931, 936-37 (2d Cir. 1993) ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.")

It is undisputed defendant ordered plaintiff's background report, which contained a red flag. It is also undisputed defendant asked plaintiff questions about her criminal history after receiving the report and during the internal review, without providing her a copy of the report or any other pre-adverse action materials. Defendant's written policy states the pre-adverse

action package should be sent immediately after a red-flag or yellow-flag report is returned. Deposition testimony suggests defendant failed to follow that policy as a matter of course, instead waiting until the close of internal review to send the materials. Doc. 32-3 at 8, 29. Plaintiff's challenge to defendant's failure to provide her a pre-adverse action package before the end of legal review is "reasonably co-extensive" with the claims of other class members. Hanlon, 150 F.3d at 1020. Thus, she has satisfied the typicality requirement.

D. Adequacy

Under Fed. R. Civ. P. 23(a), "the representative parties [must] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This factor requires: (1) that the proposed representatives Plaintiffs do not have conflicts of interest with the proposed class, and (2) that Plaintiffs are represented by qualified and competent counsel." Giles v. St. Charles Health Sys., Inc., 294 F.R.D. 585, 592 (D. Or. 2013) (citation and quotation marks omitted). Defendant does not dispute plaintiff is represented by competent counsel. In addition, defendant does not challenge plaintiff's adequacy to represent the class on any ground different from the grounds addressed in Sections III.B and III.C, supra, on commonality and typicality. Accordingly, plaintiff is an adequate class representative.

E. Predominance

Fed. R. Civ. P. 23(b) mandates that "questions of law or fact common to class members predominate over any questions affecting

Page 24 - OPINION AND ORDER

only individual members." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 594 (1997). As such, "[p]laintiffs need not establish that there are no individual issues, only that the class issues predominate and that a class action is superior." Phelps v. 3PD, Inc., 261 F.R.D. 547, 559 (D. Or. 2009). Because the 23(b)(3) predominance standard is more rigorous than the 23(a)(2) commonality standard, a finding of commonality does not necessarily mean the class will meet the predominance requirements. Hanlon, 150 F.3d at 1019. But "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." Id. at 1022 (citation and quotation marks omitted).

Defendant raises three predominance objections. It argues individual issues will predominate over class issues because (1) different statutes of limitations will apply to different putative class members; (2) some putative class members are subject to an arbitration agreement, the enforceability of which will depend on unique defenses under a variety of state laws; and (3) individualized inquiries will be necessary regarding the duration and effect of "removal" from the hiring pool during internal legal review. As explained below, although I am not persuaded by the

first argument, I agree the class definition must be narrowed to
address defendant's other concerns.

### 1. Statute of Limitations

An action for violations of the FCRA must be brought
not later than the earlier of—

> (1) 2 years after the date of discovery by the
> plaintiff of the violation that is the basis for such
> liability; or

> (2) 5 years after the date on which the violation
> that is the basis for such liability occurs.

15 U.S.C. § 1681p(1). Defendant asserts plaintiff cannot meet the
predominance standard because it will be necessary to assess, for
each class member who allegedly suffered an adverse action prior to
August 22, 2011 (two years before this lawsuit was filed), whether
the plaintiff discovered the violation but failed to take action.
If necessary, these inquiries could predominate over common class
questions because the court would have undertake them as to each
individual class member in the three year period preceding August
22, 2011.

On this record, there is no indication the court will need to
undertake individualized statute of limitations inquiries. Because
an assertion an action is barred by the statute of limitations is
an affirmative defense, defendant bears the burden of showing the
two-year period, rather than the five-year period, applies. In the
absence of evidence a significant number of individual class
members did in fact discover the violations, this requires showing
"that a reasonably diligent plaintiff would have discovered the
facts constituting the violation." Drew v. Equifax Info. Svcs.,

Page 26 - OPINION AND ORDER

<u>LLC</u>, 690 F.3d 1100, 1110 (9th Cir. 2012) (emphasis, quotation marks, and citation omitted). Plaintiff alleges defendant made a final decision all class members were "not placeable" because of information in their background reports, without first providing them with a pre-adverse action package. Defendant has neither introduced evidence any class members knew about its internal processes nor explained how a diligent class member might have obtained that information. At this stage in the litigation, it appears the five-year statute of limitations applies to all class members, and the statute of limitations question does not defeat predominance.

### 2. Arbitration

Since June 2012, defendant has provided applicants with a set of documents regarding a standardized Arbitration Agreement. Pursuant to the agreement, an applicant and defendant "mutually agree to resolve by arbitration, and only by individual arbitration, all claims . . . that the Company may have against [the applicant] or that [the applicant] may have against the Company." Doc. 37-2 at 2. The agreement contains a specific waiver of class claims. Applicants must sign a form acknowledging they received the arbitration agreement. Doc. 37-3 at 2. They have 30 days to opt out of the agreement; otherwise, the agreement becomes effective. Doc. 37-1 at 2. The agreement does not contain a choice of law provision.

Defendant has asserted it intends to compel arbitration for all putative class members subject to the arbitration agreement.

Def.'s Opp. Mot. Class Cert. at 22.   Defendants assert such a
motion to compel will require the court to make an individual
inquiry in each case as to which defenses to enforcement a given
class member may have.   Plaintiff argues the main defenses to
enforcement, such as unconscionability, could be assessed
collectively for the entire arbitration agreement subclass.
Defendant disputes that notion, contending the court would have to
perform a choice-of-law analysis for each class member to determine
which state law would govern the analysis of the contract defense.

    Because this is a federal question case, federal common law
determines which state law to apply to the assessment of contract
defenses.   Chuidian v. Philippine Nat'l Bank, 976 F.2d 561, 564
(9th Cir. 1992).   This requires the court to identify the
jurisdiction with "the most significant relationship to the
transaction and the parties," an analysis guided by the multi-
factor test set forth in the Restatement (Second) of Conflicts of
Laws.   Id. at 565.   Plaintiff argues application of this test
requires the court to conclude California law applies to all of the
arbitration agreements.   She points out (1) the agreement is
communicated to applicants from defendant's centralized compliance
department, which is located in California; (2) defendant is
headquartered in California; (3) dozens of defendant's regional
offices are in California; and (4) applicants are advised to call
a California phone number with questions about the arbitration
agreement.   Pl.'s Rep. Further Supp. Class Cert. at 23.

Those connections to California, while not insignificant, cannot overcome the fact that the arbitration agreement is based on the parties' employment relationship.    That relationship is centered where the employee works, not where the employer is headquartered.    At least for the vast majority of class members, the state with the "most significant relationship" to the transaction and to the parties is the state in which the employee signs the agreement and is placed in a job.    See Farrow v. Fujitsu America, Inc., 37 F. Supp. 3d 1115, 1121 (N.D. Cal. 2014) (applying Maryland law to an arbitration dispute because the location of the employer's headquarters in California did not "change[] the fact that [the employee] lived and worked in Maryland throughout his employment and executed the relevant documents in Maryland.") Accordingly, I agree with defendant that, for class members subject to the arbitration agreement, any defenses will be based on the contract law of the state in which they signed the arbitration agreement and highly individualized.    Accordingly, the court exercises its discretion to refine the class definition to exclude any individual who applied for temporary placement through defendant in June 2012 or later, signed the arbitration agreement acknowledgement form, and did not opt out within 30 days.    See Lozano v. AT&T Wireless Svcs., Inc., 504 F.3d 718, 728 (9th Cir. 2007) (in proposed class action, district court "[i]s not required to conduct a state-by-state analysis" of enforceability of arbitration argeement"); Penk v. Or. State Bd. of Higher Ed., 816

F.2d 458, 467 (9th Cir. 1987) (affirming district court's redefinition of the class).

### 3. Individualized Inquiries Regarding "Removal" from the Hiring Pool

As explained in Part III.B.1, supra, whether "removal" from the hiring pool pending internal legal review was an adverse action cannot be resolved on a classwide basis. To prevent individualized inquiries related to this issue from predominating over class questions, the proposed class definition must be revised to include an additional limiting factor: the review must have resulted in a determination the applicant is "not placeable."

With the class so narrowed, the two major questions identified in Part III.B.2-3, supra, drive this lawsuit. This is not to say individual issues do not exist. Plaintiff asserts, for example, she never received a pre-adverse action notice or summary of her rights, and alleges she obtained a copy of her background report only when she asked for it. Even if the class claims fail on the merits, plaintiff might be entitled to individual relief on these facts. But such questions are minor compared to the two questions common to all class members: whether defendant's practice of waiting until after internal legal review resulted in a determination an applicant was "not placeable" violated the FCRA's pre-adverse action notice requirement, and whether any such violation was willful.

F. Superiority

The final consideration with respect to class certification is whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resol[ution]." Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation and internal quotation marks omitted). "The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case," which "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." Hanlon, 150 F.3d at 1023 (citation omitted). "Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." Wolin, 617 F.3d at 1175 (citations omitted).

Here, it is in the class members' best interest to litigate their claims in a single action. "Individual actions would entail increased expenses, duplication of discovery, and a potential for inconsistent results." Giles, 294 F.R.D. at 596. Class members would have "less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery" should they be required to individually litigate their claims. Hanlon, 150 F.3d at 1023. "In fact, most class members would likely forego pursuing claims, since their individual damages are relatively

Page 31 - OPINION AND ORDER

small and litigating in federal court or elsewhere is costly."
Giles, 294 F.R.D. at 596.

Finally, the class is "ascertainable, based on objective
criteria." See 5 Moore's Federal Practice, § 23.21[1] (2015)
(describing the "implied condition" a class be "susceptible of
precise definition"). Defendant purchased and used background
reports on every class member. It has a record of those purchases
and reports, which include names and addresses of the applicants.
It also can be determined whether the applicants were deemed "not
placeable" and whether they were eventually represented by
defendant. Finally, defendant has records indicating which
applicants should be excluded from the class because they may be
subject to the arbitration agreement. Accordingly, a class action
is the superior vehicle for resolving this dispute.

CONCLUSION

As refined in this opinion, plaintiff's motion for class
certification (doc. 31) is GRANTED and the following class is
certified:

> All natural persons residing in the United States
> (including territories and other political subdivisions)
> who: (i) applied for temporary employment placement
> through RHI; (ii) about whom RHI obtained a consumer
> report for employment purposes from the General
> Information Services, Inc., from August 22, 2008, until
> the present; (iii) the consumer report contained either
> a "red flag" or a "yellow flag"; and (iv) RHI determined
> the applicant was "not placeable." The class does not
> include any person who applied for placement through RHI
> in June 2012 or later, signed the arbitration agreement
> acknowledgment form, and did not opt out of the
> arbitration agreement within 30 days.

Defendant's motion to deny class certification (doc. 34) is DENIED.

The parties' requests for oral argument as DENIED as unnecessary.

IT IS SO ORDERED.

Dated this _10th_ of November, 2015.


_____
Ann Aiken
United States District Judge

Page 33 - OPINION AND ORDER