IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

BONNIE MAGALLON, on behalf of herself
and all others similarly situated,

        Plaintiff,

   v.

ROBERT HALF INTERNATIONAL, INC., a
foreign corporation,

        Defendant.

Case No. 6:13-cv-01478-AA
**OPINION AND ORDER**

---

AIKEN, District Judge:

    This is certified class action in which class representative Bonnie Magallon ("plaintiff"), on behalf of herself and all others similarly situated, moves to compel discovery for the purposes of compiling a complete and accurate class membership list. Defendant Robert Half International, Inc. ("RHI" or "defendant") opposes plaintiff's motion to compel. For the reasons set forth below, plaintiff's motion is granted.

## BACKGROUND

    In this certified class action, plaintiff, on behalf of herself and all others similarly situated, asserts that defendant violated the Fair Credit Reporting Act ("FCRA"). Defendant

Page 1 – OPINION AND ORDER

operates a professional staffing service that matches individuals seeking employment with employers. Defendant matches each qualified applicant with a potential employer seeking someone with the applicant's qualifications to fill a short-term or long-term position. Defendant requires a background check of applicants once they have matched and interviewed with an employer.

In 2011, Plaintiff applied for a job with RHI. After she matched and interviewed with a potential employer, RHI ordered a background report from General Information Services, Inc. ("GIS"). RHI deemed her "not placeable" based on information (criminal history) in that background report. RHI did not give plaintiff a copy of her background report until after it made the "not placeable" decision and after she requested a copy of the report. Plaintiff alleges that defendant violated 15 U.S.C. § 1681b(b)(3) when it rejected her application for employment because of her criminal history without giving her notice that it was using a background report to make an adverse employment decision, providing her a copy of the report, or offering her a meaningful opportunity to dispute the information in the report. Plaintiff seeks statutory damages for willful violations of the FCRA.

This case was filed on August 22, 2013 and the parties engaged in extensive class certification discovery for two years. On July 20, 2015, the parties filed simultaneous motions regarding class certification. In an order dated November 10, 2015, I certified the following class:

> All natural persons residing in the United States (including territories and other political subdivisions) who: (i) applied for temporary employment placement through RHI; (ii) about whom RHI obtained a consumer report for employment purposes from the General Information Services, Inc., from August 22, 2008, until the present;[1] (iii) the consumer report contained either a "red flag" or a "yellow

---

[1] The parties disagree about the meaning of "to the present" in the class definition—plaintiff took the position that the phrase extended the class membership period through the

flag"; and (iv) RHI determined the applicant was "not placeable." The class does not include any person who applied for placement through RHI in June 2012 or later, signed the arbitration agreement acknowledgment form, and did not opt out of the arbitration agreement within 30 days.

*Magallon v. Robert Half Int'l, Inc.*, 311 F.R.D. 625, 641–42 (D. Or. 2015). After the class was certified, plaintiff began her attempts to compile a class list. I granted requests to extend discovery several times: once at plaintiff's (unopposed) request, and twice in response to a joint request. That initial phase of class list discovery lasted ten months.

On September 15, 2016, plaintiff filed her first motion to compel class list discovery. Defendant produced a spreadsheet of 4,600 individuals in response. A majority of those individuals listed class member status as "To Be Determined." The 4,600 number stood in stark contrast to the 60,000 individuals for whom defendant had previously reported obtaining red- or yellow-flag background check reports from GIS in the relevant time period. Following a telephonic conference on November 16, 2016, I granted the motion in part and denied the motion in part:

> It is defendant's responsibility to identify class members and produce a complete and accurate class list. The Court acknowledges defendant's statements regarding logistical difficulties identifying class members. In view of those difficulties, defendant is ordered to produce the class list by May 15, 2017. If defendant does not produce the class list within that time period, the Court will order defendant to produce the information and records described on page 8 of Plaintiff's Motion to Compel Class List Discovery so that plaintiff can independently compile the class list. Defendant's request that plaintiff be ordered to pay part of the costs of production is denied.

---

future date of final resolution of this case, whereas defendant took the position the class membership period ended the date the class certification order was issued. However, during the telephonic oral argument held on April 2, 2018, both parties stipulated that the class includes individuals for whom RHI obtained a GIS background report between August 22, 2008 and November 30, 2017.

*Magallon v. Robert Half Int'l, Inc.*, No. 6:13-cv-01478 (D. Or. Nov. 16, 2016) (order granting in part and denying in part Motion to Compel) (doc. 62). The second phase of class list discovery lasted thirteen months, during which time I granted three more joint requests to extend discovery deadlines. On June 17, 2017, defendant produced an amended class list of 1,382 individuals. On November 3, 2017, plaintiff deposed Michael Hoffman, defendant's employee responsible for compiling the class list.

Plaintiff filed the instant second motion to compel class list discovery on December 20, 2017. Plaintiff argues that, at this point, she is entitled to direct access to defendant's files in order to compile an accurate class list because defendant has not made diligent efforts to apply the objective criteria provided in the class definition in compiling the class list. Plaintiff contends that defendant's process likely has omitted thousands of class members from the class list. Plaintiff now seeks access to defendant's files in order to independently come up with a class list.

Plaintiff wants me to order defendant to produce a list of individuals who (1) were the subject of GIS background reports ordered in during the relevant time period, (2) had red or yellow flag notations on their GIS background reports, and (3) were not placed with an employer within thirty days of the date of their background check. With respect to those individuals, plaintiff seeks access to the following:

- MicroJ+, PeopleSoft, and DocuSign files/notes
- Inquiries to or communications from the legal department concerning placeability and background check
- Pre-adverse action letters
- Signed arbitration acknowledgment forms or arbitration agreement notes

Defendant believes that it has made sufficient efforts to compile the class list and argues the size of the class list merely reflects the objective criteria of the class definition. Defendant makes three major arguments against further production: (1) further discovery will be duplicative, (2) largely confidential and/or privileged, and (3) unnecessarily burdensome on defendant. Defendant asserts that plaintiff has already been given all of the data defendant relied on in making the "non-placeability" determination, that it has provided plaintiff with a reasonably good class list, and that at some point the burden of additional discovery outweighs getting the perfect list.

## STANDARDS

A party "may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Relevance and proportionality are evaluated by considering "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* A party "need not provide discovery of information stored electronically from sources that the party identifies as not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). "On motion to compel discovery . . . , the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost." *Id.* Nonetheless, the court may order discovery of such electronically stored information if the requesting party shows good cause, consistent with the limitations of Rule 26(b)(2)(C). *Id.* That rule requires the court to limit "the frequency of extent of discovery" when the discovery sought is "unreasonably cumulative or duplicative," the party seeking discovery has had "ample opportunity to obtain the

information by discovery in the action," or the proposed discovery exceeds the scope of Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C). In addition, "discovery, like all matters of procedure, has ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

## DISCUSSION

The parties in this case have been litigating class list discovery for a very long time. As noted above, the parties have gone through three different phases of discovery, each lasting between ten months and two years. However, the class list compilation process still suffers from some serious gaps and errors.

Plaintiff requests discovery related to individuals (1) for whom RHI obtained red- or yellow-flag GIS reports in the relevant time period and (2) who were not placed with an employer with thirty days of the issuance of the background report. Throughout this discussion section, I refer to that subgroup of applicants as the "Narrowed List."

I.     *Production of Signed Arbitration Agreement Acknowledgment Forms*

Plaintiff requests signed arbitration agreement acknowledgment forms, any DocuSign files indicating whether an applicant consented to or opted out of arbitration, and/or notes concerning arbitration for those on the Narrowed List. Plaintiff argues that defendant impermissibly excluded many potential class members on the presumption that nearly every applicant from June 2012 on agreed to arbitration.

From June 2012 onwards, defendant included an arbitration agreement in its application packet. *See Magallon*, 311 F.R.D. at 640. Applicants also received arbitration agreement acknowledgment forms. Those forms stated that, unless prospective employees affirmatively

opted out of the arbitration agreement within thirty days, they would be bound to settle any disputes with RHI through arbitration.

The signed arbitration agreement acknowledgment forms are highly relevant to the class membership question because the class definition expressly excludes individuals who signed those forms and did not opt out within the relevant timeframe. Contrary to defendant's position, the *absence* of an "opt-out" does not by default establish that an individual has consented to arbitration. At the class certification stage, defendant argued that individuals who had agreed to arbitration should be excluded from the class because their claims would have to be adjudicated individually through the arbitration process. But defendant lacks authority to compel an individual to participate in arbitration without documentation that he or she in fact agreed to settle disputes in that matter. It is defendant's burden to produce documentation that an individual who meets the other criteria for class membership should be excluded due to an agreement to arbitrate. *See Ashbey v. Archstone Property Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015) (holding that, under the Federal Arbitration Act, the party seeking to compel arbitration has the burden to show that (1) a valid agreement to arbitrate exists and (2) the agreement encompasses the dispute at issue).

Defendant is ordered to produce signed arbitration acknowledgment forms, any DocuSign files indicating consent to arbitration or opting out of arbitration, and/or notes concerning arbitration for those on the Narrowed List. Any individual who did not opt out of arbitration *and* for whom defendant can produce a signed arbitration agreement acknowledgement form can be excluded from the list of individuals to whom the remainder of this order applies.

II.  *Discovery for Individuals Not Subject to Arbitration*

With respect to those individuals on the Narrowed List for whom defendant cannot produce a signed arbitration agreement acknowledgment form, defendant is ordered to produce the following:

A.  *MicroJ+, PeopleSoft, and DocuSign files/notes*

Plaintiff requests internal hiring records from three databases: MicroJ, PeopleSoft, and DocuSign. The MicroJ and PeopleSoft databases contain information about placeability decisions. Plaintiff argues that records from those databases are particularly important because her MicroJ and PeopleSoft records contain enough information to show that she qualifies as a class member. As explained, plaintiff did not receive a pre-adverse action letter. Moreover, Mr. Hoffman's review of legal department communications did not turn up any "hits" for plaintiff's name during the production of the first class list. Plaintiff contends that, just as she was not identified through Mr. Hoffman's first process, there are almost certainly other people left out by the second process and that those individuals' MicroJ and PeopleSoft records contain the necessary information to ascertain class membership. Records from all three databases also contain information regarding arbitration documents.[2]

Mr. Hoffman retrieved data from the MicroJ, PeopleSoft, and DocuSign databases to develop the potential class list, but he did not pull MicroJ records for all of the 88,377 people on the initial GIS list. In view of the information in plaintiff's employment record, I find it reasonably likely that there are other potential class members that were missed during that partial data pull. I understand the burden of producing these records when the databases, as defendant

---

[2]  Plaintiff applied for a job through RHI in August 2011, before defendant began giving applicants arbitration agreements and opt-out forms. From June 2012 on, the database records contain information about the arbitration documents.

noted, do not share common data points. However, I note that plaintiff's current request is narrowed compared to the documents she sought in her first motion to compel and find that the risk of excluding significant numbers of potential class members outweighs the burden on defendants to produce these records. Thus, defendant is ordered to produce (or otherwise grant plaintiff access to) MicroJ, PeopleSoft, and DocuSign records for individuals on the Narrowed List who cannot be excluded from membership based on arbitration documentation.

B. *Inquiries to or Communications from the Legal Department Concerning Placeability and Background Check*

Plaintiff requests all communications sent or received by the legal department any paper files of "branch inquiries" received by the legal department concerning applicants on the Narrowed List. Plaintiff believes that those communications will further reveal information helpful in compiling the class list and that defendant did not conduct a thorough review of the relevant communications. Plaintiff states that defendant reviewed communications related to only 9,500 individuals (compared to more than 88,000 individuals on the larger GIS list) and notes Mr. Hoffman's testimony that RHI's email communications covered only candidates who applied after mid-2013.

The communication notes from the legal department concerning placeability and background checks will further allow plaintiff to identify information relevant to class membership. Defendant argues that the communication notes might contain information protected by privilege that could require defendant to spend time and resources redacting privileged information. Plaintiff argues that those communications are not protected by privilege because the legal department put these determinations at issue by using them "as a sword to cut down the size of the class." Pl's Reply 6. I note and understand the concerns of both parties. Ultimately, however, I am persuaded that defendant put the content of these communications at

issue by using them to exclude class members. Moreover, there is a stipulated protective order in place in this case, which mitigates concerns about disclosure of confidential information. Stipulated Protective Order, *Magallon v. Robert Half Int'l, Inc.*, No. 6:13-cv-01478 (D. Or. Nov. 3, 2017) (doc. 78).

It is likely that some of the legal department communication notes are scattered in various places, such as handwritten notes of communications, notes entered into databases, or email communications. I understand that such communications may take time to compile, but they are nonetheless pertinent to determining an individual's placeability. Once again, I find that the relevance of the records outweighs the burden on defendant. Thus, defendant is ordered to produce these communications for individuals on the Narrowed List who cannot be excluded from class membership due to arbitration documentation.

C.    *Pre-Adverse Action Letters*

Plaintiff also requests pre-adverse action letters from defendant. Defendant's policy is to send a pre-adverse action letter to applicants after their background report returns with a red or yellow flag notation and internal review classifies the applicant as not placeable. As noted, that policy was not followed in plaintiff's case—but defendant insists that in the general course it follows this policy. By definition, any person on the larger GIS list who received a pre-adverse action letter meets the four enumerated class membership criteria. This is not a silver bullet, because it is unlikely that plaintiff is the only person who never received such a letter. But for individuals with pre-adverse action letters, the only question would be whether the applicant consented to arbitration.

It must be noted that compiling pre-adverse action letters might be a very time-consuming task. The letter process was not centralized and was the responsibility of the

administrative staff at defendant's 130 branches. Defendant would have to track down each employee's file individually and locate copies stored electronically and in paper files. However, potential class members should not be left out due to the absence of a uniform, central information system—defendant has sole control over how it maintains its own files. Once again, I find that the likely relevance of the requested documents outweighs the burden on defendants to produce those documents.

In opposition to producing the pre-adverse action letters, defendant argues that individuals who received these letters by definition received fair notice of their placeability determination and thus had a meaningful opportunity to challenge those determinations. However, I find that argument unavailing. As explained in the class certification order, the heart of the parties' dispute is whether RHI reaches a final placeability decision *before* or *after* informing the applicant about the background report; the absence or existence of a letter is not dispositive proof on that dispute because some evidence in the record suggests "that the meaningful period within which to dispute the contents of [an adverse GIS] report is during the internal review process, and that after the 'not placeable' decision is made, any opportunity given to an applicant to dispute or explain the contents of the report is illusory." *Magallon*, 311 F.R.D. at 637.

Defendant is ordered to produce pre-adverse action letters in its possession for individuals on the Narrowed List who cannot be excluded from class membership due to arbitration documentation.

## CONCLUSION

Plaintiff's Second Motion to Compel Class List Discovery (doc. 81) is GRANTED. Defendant is ordered to produce or otherwise give plaintiff access to the documents, databases, and files described in more detail in this opinion.

IT IS SO ORDERED.

Dated this ⁄ day of May, 2018.

_____
Ann Aiken
United States District Judge