IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

**BONNIE MAGALLON**, on behalf of
herself and all others similarly situated

       Plaintiff,

   v.

**ROBERT HALF INTERNATIONAL
INC.,** a foreign corporation,

       Defendant.

Case No. 6:13-cv-01478-AA

**OPINION AND ORDER**

AIKEN, District Judge.

In this consumer class action, class representative Bonnie Magallon, ("Plaintiff"), alleges that Robert Half International Inc. ("Defendant") violated provisions of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. Defendant moves for summary judgment under Fed. R. Civ. P. 56. For the reasons set forth below, Defendant's Motion for Summary Judgment ("MSJ"), Doc. 161, is DENIED.

1 – OPINION AND ORDER

## BACKGROUND

This action stems from Defendant's use of a background report in deciding to reject Plaintiff's employment application. Defendant, a professional staffing service company, rejected Plaintiff's application allegedly based on her past misdemeanor conviction without providing to Plaintiff the "pre-adverse action notice" required under FCRA.

## I.    FCRA Requirements for Adverse Action Based on Consumer Report

The pre-adverse action notice in FCRA requires that:

> "When using a consumer report for employment purposes, *before taking any adverse action* based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates-- (i) a copy of the report; and (ii) a description in writing of the [consumer's rights] under section 1681g(c)(3)."

15 U.S.C. § 1681b(b)(3)(A) (emphasis added). FRCA defines an "adverse action" as a "denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee." 15 U.S.C. § 1681a(k)(1)(B)(ii).

## II.    Defendant's Hiring Process

Defendant places professional-level applicants in temporary and permanent jobs through hundreds of offices across the nation. Individuals seeking work apply to Defendant. Defendant attempts to match applicants with a business client seeking someone with the applicant's qualifications to fill a short-term or long-term position.

All applicants must consent to a background report by signing a form acknowledging that "[Defendant] will use the information contained in these reports

as a factor in determining [their] eligibility for employment." ECF No. 33-2 at 2.[1]  At times relevant to this case, Defendant ordered background reports from General Information Services, Inc. ("GIS").

Defendant provides hiring criteria to GIS.  GIS uses that hiring criteria to grade an applicant's background report by placing a green, yellow, or red "flag" on the report.  When the report is marked with a green flag, the applicant is generally eligible to proceed for placement with a client, but when a report is marked with a yellow or red flag, GIS notifies Defendant, and Defendant's legal department reviews the background report.  ECF No. 161-1 at 105-107.  After reviewing a yellow or red flagged background report, Defendant's legal department determines whether the applicant is "placeable" or "not placeable" based on the information in the report.  Doc. 161-1 at 105-107; 157, 162.

In taking an adverse action based on a background report, Defendant maintains that it has a written policy to notify the applicants in accordance with FCRA, § 1681b.  ECF 161-1 at 166 (Ex 4 ¶ 9).  Defendant asserts that its adverse action notice package complies with FCRA and consists of three documents: (1) a pre-adverse action letter that outlines the actions a candidate must follow to dispute any findings, (2) a copy of the background report, and (3) a copy of the summary of

---

[1]      In this opinion, for exhibits and declarations, pre-stamped bates numbering is inconsistent and sporadic.  Therefore, citation to the document page number in the record is based on the e-filing document number, followed by a dash, followed by the exhibit number, followed by a pin cite to the counted page in the document: ECF 161-1 at 1 would reference the first actual page of declaration 1 to ECF 161.  For motions, the Court cites to the internal pagination of the motion, rather than to any filing-generated stamps.

consumer rights, titled "A Summary of Your Rights Under the Fair Credit Reporting Act." MSJ at 5. Defendant's policies also mandate a waiting period of ten days after the package is provided before an adverse decision can be made. *Id.* at 9.

### III.    Plaintiff's Application and Employment Rejection

On or around August 19, 2011, Plaintiff applied for a job with Defendant's placement office. On August 22, 2011, Plaintiff completed a background check authorization and Defendant initiated its hiring process endeavoring to place Plaintiff with one of at least two different clients: Trade Winds Transportation and OSU Foundation. ECF No. 164-7 at 2. In her application, Plaintiff disclosed a 2006 misdemeanor conviction, stating that she was "involved in a traffic related incident." ECF No. 161-1 at 128. On August 22, 2011, Defendant noted in Plaintiff's electronic file that Trade Winds Transportation had not selected Plaintiff for hire. ECF No. 164-7 at 2.

On August 30 or 31, 2011, Defendant requested Plaintiff's background report from GIS. After conducting its background check, GIS marked the report with a red flag. The report described Plaintiff's misdemeanor as "harassment physical" and "resist arrest." ECF No. 161-1 at 145; ECF No. 164-7 at 3.

On September 6, 2011, Defendant annotated Plaintiff's electronic file regarding her application to OSU Foundation, stating "pending background approval will start next week." ECF No. 164-7 at 2. On September 8, 2011, Defendant notified Plaintiff that its legal department wanted more information from Plaintiff about the misdemeanor conviction. ECF No. 161-1 at 33, 64. On September 9, 2011, Plaintiff

responded, explaining that she had not been the driver in the traffic incident when the officer asked her to get out of the vehicle. ECF No. 161-1 at 64. Plaintiff explained that she was five months pregnant and that the officer was pushing her against the car. *Id*. She "pushed [herself] back from the vehicle" and explained that she "was pregnant[,] in hope that he would back up from pushing [her] against [the] car but he did not." *Id*.

On September 13, 2011, Defendant annotated Plaintiff's electronic file stating:

> "A careful review of this candidate['/]s criminal history has been made by the legal department. It has been determined that this candidate does not meet [Defendant's] standards for placement and [Defendant] cannot be a resource for him/her. Please refer to the Field Compliance Guide . . . for instructions on how to document this decision and inform the candidate. In accordance with federal law, you must send the candidate the adverse action letters. These letters, along with detailed instructions, can be found in the Filed Compliance Guide[.]"

ECF No. 164-7 at 4.

On September 14, 2011, Defendant contacted Plaintiff. ECF No. 161-1 at 222; ECF No. 164-7 at 4. There are no notes in Plaintiff's electronic file concerning what information Defendant communicated to Plaintiff during that contact.

Now, Plaintiff maintains that Defendant told her she was not placeable based on the background report. Resp. in Opp'n at 8. Defendant disputes this, asserting that it has no record of informing Plaintiff that she was not placeable. MSJ at 9. Defendant contends that, "to the extent any such conversation occurred, it was an error and an unauthorized violation [Defendant's] policies." MSJ at 9. Further, Defendant has no record one way or the other whether it sent Plaintiff the pre-

adverse action notice package or an adverse action letter, as required by FCRA and Defendant's own policies. *Id.*

On September 22, 2011, Defendant made the following note in Plaintiff's electronic file: "[Plaintiff] requested a copy of her background check, can you send it to her please?" ECF No. 164-7 at 4. Defendant noted that it sent Plaintiff a copy of her background report that day. *Id.*

Plaintiff brought this action alleging that Defendant used a consumer report for employment purposes and took adverse action against Plaintiff, based in whole or in part on the consumer report, without providing the required information under FCRA. Compl. ¶ 32. Further, Plaintiff alleges that doing so constitutes a willful violation of FCRA. *Id.* ¶ 33. As such, Plaintiff contends that Defendant is liable Under 15 U.S.C. § 1681n, for its failure to comply with § 1681b(b)(3)(A), in an amount equal to the sum of (1) damages not less than $100 and not more than $1,000 per violation, (2) punitive damages in an amount to be determined by the jury, (3) attorney fees, and (4) costs. *Id.* ¶ 34.

Before the Court is Defendant's Motion for Summary Judgment. Defendant asserts that (1) Plaintiff lacks standing; (2) Defendant's policies were compliant with FCRA, and that Defendant adhered to them during the class period; and (3) Plaintiff's allegations do not support her claim for statutory damages. MSJ at 10, 11, 14.

## LEGAL STANDARD

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no

genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 325 (1986). Where the nonmoving party will have the burden of proof on an issue at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.*

When evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630-31.

## DISCUSSION

### I.    Standing

Defendant argues that Plaintiff alleges a "bare procedural violation" of FCRA, divorced from any concrete harm, and therefore lacks standing under Article III. MSJ at 11. Defendant maintains that even if it failed to send Plaintiff the pre-adverse action notice, Plaintiff sustained no injury, where her background report was accurate, she herself disclosed the conviction, and had the opportunity to provide further information to Defendant about the context of the misdemeanor. *Id.* at 9.

Plaintiff counters that her claim facially alleges concrete harm because she contends that Defendant's failure to provide her with a pre-adverse action notice, in violation of FCRA, deprived her of her right under FCRA to information about what the background report contained, how information was characterized, and who prepared the report. Resp. in Opp'n at 9. Further, Plaintiff maintains that because of the contents of the background report, she lost a job opportunity that had been conditionally offered to her. Resp. in Opp'n at 9-10.

Article III of the Constitution limits the power of the federal judiciary by confining its jurisdiction to "cases" and "controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). For there to be a case or controversy under Article III, a plaintiff must have standing. *Id.* at 560. To establish standing, a plaintiff bears the burden to show (1) that they suffered an injury in fact that is concrete and particularized, (2) that there exists a causal connection between the injury and the defendant's conduct, and (3) that the injury is likely to be redressed by a favorable decision. *Id.* at 560-61.

Particularity and concreteness are two separate inquiries. *Robins v. Spokeo, Inc. (Spokeo II),* 867 F.3d 1108, 1111 (9th Cir. 2017). For an injury to be "particularized," it must affect the plaintiff in a personal and individual way. *Spokeo, Inc. v. Robins (Spokeo I)*, 578 U.S. 330, 339 (2016), *as revised* (May 24, 2016) (collecting cases, internal quotations omitted). In the context of FCRA, the plaintiff can show a particularized injury by alleging that the defendant violated her statutory rights, not just the statutory rights of other people, and further, allege a "personal

8 – OPINION AND ORDER

interest" in the handling of [consumer] information.  *Id*. at 340; *cf DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 344 (2006) (injury not particularized where the plaintiff alleged suffering in "some indefinite way in common with people generally.").

The Ninth Circuit has adopted a two-step framework to determine whether alleged violations of FCRA provisions are sufficiently concrete to confer standing: "(1) whether the statutory provisions at issue were established to protect [a plaintiff's] concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests."  *Spokeo II*, 867 F.3d at 1113.

### A.    *Particularized Injury*

Plaintiff satisfactorily alleges particularized injury, where she asserts a *personal* injury—that Defendant violated *her* right to information under FCRA when it did not send *her* the pre-adverse action package, and that the violation caused *her* loss of a job opportunity.  By particularized, the Supreme Court means that the injury must affect the plaintiff in a "personal and individual way."  *Lujan*, 504 U.S. at 560 n. 1.

### B.    *Concrete Injury*

Congress provides the consumer with a legally cognizable right to specific information.  Specifically, Congress provided consumers against whom current or prospective employers are contemplating adverse employment action with the right to receive a copy of the report on which the adverse action is based and a summary of

their rights under FCRA before the contemplated adverse employment action is taken. Plaintiff has thus alleged a concrete informational injury.

In the context of FCRA, the Ninth Circuit has found a concrete injury where the plaintiff alleged the violation of his right to information under 15 U.S.C. § 1681b(b)(2)(A)(i). *Syed v. M-I, LLC*, 853 F.3d 492, 499 (9th Cir. 2017). In *Syed*, the court found that the plaintiff alleged more than a "bare procedural violation" where the disclosure requirement at issue in 15 U.S.C. § 1681b(b)(2)(A)(i), created a right to information which the defendant failed to properly provide. *Syed*, 853 F.3d at 499.

Though *Syed* concerned a different subsection of FCRA, the statute at issue there requires a person who procures a consumer report for employment purposes to provide "a clear and conspicuous disclosure" to the consumer beforehand, and to do so "in a document that consists solely of the disclosure." In *Syed*, the plaintiff alleged that the defendant provided a liability waiver along with the required disclosure, violating § 1681b(b)(2)(A)(i) which requires the document "consist[] solely of the disclosure." The plaintiff maintained that because the defendant included the extraneous information along with the disclosure, he did not know he was consenting to the procurement of his consumer report. The court found that § 1681b(b)(2)(A)(i) creates a right to information by requiring prospective employers to inform job applicants that they intend to procure their consumer reports as part of the employment application process. *Syed*, 853 F.3d at 499.

Although *Syed* evaluated the disclosure required by § 1681b(b)(2)(A)(i), the same reasoning supports a finding that § 1681b(b)(3)(A) creates similar rights to

information—a copy of the consumer report and notice of rights under FCRA—which Plaintiff here alleges that she was not provided.

Similarly, in the context of post-adverse action notice, this court evaluated 15 U.S.C. § 1681b(b)(3)(B), under which an employer must give notice to an applicant "that adverse action has been taken based in whole or in part on a consumer report received from a consumer reporting agency" within three days of the adverse action. *Demmings v. KKW Trucking, Inc.*, No. 3:14-CV-494-SI, 2017 WL 1170856, at *7 (D. Or. Mar. 29, 2017). The court found that denying a plaintiff § 1681b(b)(3)(B) notice causes, at minimum, a risk of concrete, informational harm. *Demmings,* No. 3:14-CV-494-SI, 2017 WL 1170856, at *9.

Plaintiff has adequately alleged a concrete harm. Here, Plaintiff has alleged concrete injuries where Defendant took adverse employment action without providing the information guaranteed by § 1681b(b)(3)(A) and thus was deprived of the opportunity to correct the accuracy or completeness of her consumer report

Defendant contends that Plaintiff cannot show harm because the information in her background report is allegedly accurate. Plaintiff disputes that the information is accurate. The concreteness of Plaintiff's harm, however, is not solely dependent on the accuracy of her background report. *See Demmings,* No. 3:14-CV-494-SI, 2017 WL 1170856, at *9 (stating that Congress did not condition the protections in FCRA on the accuracy or inaccuracy of the information contained in the consumer report); *see also Terrell v. Costco Wholesale Corp.*, No. C16-1415JLR, 2017 WL 951053, at *3-5 (W.D. Wash. Mar. 10, 2017) (finding that Terrell's allegation

that Costco's disclosure and authorization form violated § 1681b(b)(2)(A) sufficient to confer standing, although Terrell did not allege that the form was confusing or that the background report was inaccurate or prevented him from gaining employment).

Finally, Defendant's argument that Plaintiff suffered no injury—where she disclosed her misdemeanor and where she provided information to Defendant about the misdemeanor—is unavailing. Plaintiff's injury does not stem from whether Plaintiff provided information to Defendant, but from whether Defendant provided information to Plaintiff, the information to which she was statutorily entitled under § 1681b(b)(3)(A). FCRA's requirement that Defendant provide to Plaintiff copy of her background report not not only aids Plaintiff in disputing the accuracy or completeness with prospective employers, but more importantly, ensures that Plaintiff can dispute information directly *with the consumer reporting agency*—Plaintiff's right under FCRA. *See Walker v. Fred Meyer, Inc.*, 953 F.3d 1082, 1093 (9th Cir. 2020) (so stating).

Defendant has only developed an argument with respect to Plaintiff's ability to demonstrate injury-in-fact. The Court finds that Plaintiff's allegations, declarations, and affidavits establish the other necessary elements of standing: that her injury is fairly traceable to Defendant's conduct and likely to be redressed by a favorable judicial decision. *See Lujan*, 504 U.S. at 560-61.

## II.    Evidence of FCRA Violation

Defendant contends that Plaintiff's has not shown that Defendant violated § 1681b(b)(3)(A). Defendant contends that its written policy complies with the pre-

adverse action notice requirement and that its employees follow that policy, maintaining that Plaintiff has failed to demonstrate otherwise.  Whether Defendant's written policy complies with FCRA constitutes evidence to support Defendant's claim that it did send Plaintiff the pre-adverse action package.  However, Plaintiff's evidence that she had to request a background report many days after Defendant determined that it could not be a resources for Plaintiff, along with Defendant's documentation in her employment file annotating the request and its action, creates a factual dispute material to the resolution of this issue.  A reasonable factfinder could determine that Plaintiff's evidence supports her claim that she did not receive her background report before Defendant took adverse action against here.

Accordingly, the Court cannot conclude that Plaintiff's claim is "absent" of evidence, and thus Defendant is not entitled to summary judgment on that issue. *See Celotex Corp.* 477 U.S. at 325 (stating that where the nonmoving party will have the burden of proof on an issue at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case.").

Defendant also contends that Plaintiff lacks evidence that it took adverse action against her before it sent her a copy of her background report.  MSJ at 13-14. Discussed above, FCRA defines adverse action as "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee . . . and an action taken or determination that is made in connection with an application . . . [that is] adverse to the interests of the consumer." 15 U.S.C. § 1681a(k)(B)(ii), (iv).

13 – OPINION AND ORDER

As this Court explained during class certification, to interpret this pre-adverse action provision, courts must address two distinct legal questions: (1) whether an employer's action in a given case constitutes an "adverse action," triggering the notice requirement; and (2) whether the notice was provided a sufficient time "before" the adverse action was taken. *Magallon v. Robert Half Int'l, Inc.*, 311 F.R.D. 625, 633 (D. Or. 2015). First, with respect to the scope of the term "adverse action," FCRA allows an employer to form the intent to take an adverse action before the decision actually takes effect. *Moore v. Rite Aid Hdqtrs. Corp.*, 33 F. Supp. 3d 569, 574 (E.D. Pa. 2014). Accordingly, an internal decision to decline to hire an applicant based on the contents of a consumer report is not an adverse action. *Obabueki v. Int'l Bus. Machines Corp.*, 145 F. Supp. 2d 371, 391 (S.D.N.Y. 2001). Rather, "an adverse action occurs when the decision is carried out, when it is communicated or *a*ctually takes effect, and an actor has until that time to take the necessary steps to comply with [FCRA's] requirements." *Moore*, 33 F. Supp. 3d at 574 (citing *Burghy v. Dayton Racquet Club, Inc.*, 695 F. Supp. 2d 689, 703 (S.D. Ohio 2010) (internal quotations omitted).

When an employer's decision-making process involves an individualized adjudication of an applicant's consumer report, the pertinent question in determining the point of adverse action is whether the adjudication is a final decision, or whether the adjudication is merely an internal decision to begin the pre-adverse action process. *See, e.g., Moore*, 33 F. Supp. 3d at 574-75.

Second, with respect to the timing the notice, FCRA does not mandate a specific amount of time between the notice and adverse action. However, employers

must give an applicant adequate time to meaningfully review and contest the results. *Magallon*, 311 F.R.D. 625, 634 (D. Or. 2015); *see also Johnson v. ADP Screening and Selection Services, Inc.*, 768 F. Supp. 2d 979, 984-85 (D. Minn. 2011).

Here, Plaintiff and Defendant dispute at which point Defendant took adverse action against Plaintiff and other class members.  Plaintiff alleges that the legal department's determination that a candidate is "not placeable" constitutes adverse action because the legal department's determinations are final, and lead to a prompt communication to the candidate that they will not be placed.  Resp. in Opp'n at 5, 13. Defendant contends that it does not make a final determination before sending the pre-adverse package and that its legal department individually reviews each derogatory report to determine whether the results potentially disqualify the applicant, and if so, it directs field personnel to send the pre-adverse action package and consider any responses received by candidates. MSJ at 13-14.

A reasonable factfinder could find that the "not placeable" determination is a final decision and therefore an adverse action within the meaning of the FCRA.  In deposition testimony, Defendant's employee described the legal department's determination as a "final decision."  Joiner Dep. 26:8-25.  An email from Defendant's legal department to field personnel regarding the review of a candidate's criminal history states that "it has been determined that this candidate does not meet [Defendant's] standards for placement and [Defendant] cannot be a resource for her." ECF No. 164-4.  Defendant's policy instructs staff to send the adverse action "when [Defendant] cannot continue to employ the candidate based, in whole or in part, on

the Consumer Report." ECF No. 161-1 at 154. Accordingly, Plaintiff's claim is not absent of evidence from which a reasonable factfinder could infer that Defendant took adverse action before sending the required information.

## III.  **Willful Violation**

Defendant argues that to the extent it violated the FCRA, the violation was not committed willfully, which precludes Plaintiff from collecting statutory damages. Defendant relies on the assertion that its policies are FCRA-compliant and contends that if an employee in fact failed to send Plaintiff a pre-adverse action package, this amounts to "human error" and not a willful violation. Plaintiff contends that whether a violation is willful is a question of fact for the jury, and in this case, there is evidence that would allow a reasonable jury to conclude that Defendant knew that when taking adverse employment action based on a background report, FCRA requires it to provide a copy of a the report and disclosure of the consumer's rights under FCRA, and that when it allegedly failed to send the required information, that failure was willful.

The FCRA provides that any party who willfully violates one of its provisions is liable to the consumer for actual damages or statutory damages between $100 and $1,000. 15 U.S.C. § 1681n(a). Generally, willfulness under the FCRA is generally a question of fact for the jury. *Sponer v. Equifax Information Services, LLC*, No. 3:17-cv-02035-HZ, 2019 WL 2437450, at *5 (D. Or. June 7, 2019); *see also Ashby v. Farmers Ins. Co.*, 565 F. Supp. 2d 1188, 1206 (D. Or. 2008) ("Courts that have addressed the

issue have held uniformly that whether a FCRA violation is willful is a matter for the jury").

A party willfully violates the FCRA if it knows that its conduct violates the act or if it acts in reckless disregard of its statutory duty. *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 57 (2007). Recklessness is generally understood as conduct that entails an unjustifiably high risk of harm. *Id.* at 49. By contrast, "[a] party does not act in reckless disregard of FCRA unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Syed,* 853 F.3d at 503 (citing *Safeco,* 551 U.S. at 69) (internal quotations omitted). If a party's reading of the statute is not objectively unreasonable, it fails to meet the standard of recklessness required to impose statutory damages. *Safeco*, 551 U.S. at 51.

Plaintiff presented evidence that Defendant's employee testified that "once the background check comes back . . . if [the legal department] decide[s] that we are not going to represent that candidate . . . it is my responsibility or the person who interviewed the candidate . . .to call the candidate and let them know that we cannot represent them." Joiner Dep. 20:23-21:4. The employee further stated that she was unaware of whether Defendant's policies required her to send the candidate a copy of the background report and that her training did not involve sending letters regarding the results of background checks. *Id.* 21:11-22, 25:1-5. Another employee testified that she supervises other employees who handle the pre-adverse notice process and

that she was unaware whether Defendant's policies required employees to send applicants a pre-adverse action letter after legal department reviews their background check results. Waldman Dep. 53: 10-25. Accordingly, the Court concludes that Plaintiff's claim is not absent of evidence and therefore Denies Defendant's Motion for Summary Judgment.. The Court therefore denies the motion on this issue.

## CONCLUSION

For the reasons stated, Defendant's Motion for Summary Judgment, ECF No. 161, is DENIED.

IT IS SO ORDERED.

Dated this  7th  day of February 2023.


 /s/Ann Aiken
Ann Aiken
District Judge