IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **BONNIE MAGALLON**, on behalf of herself and all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>**ROBERT HALF INTERNATIONAL INC.**,<br><br>    Defendant. | Case No. 6:13-cv-1478-SI<br><br>**OPINION AND ORDER GRANTING FINAL APPROVAL OF CLASS SETTLEMENT** |

Robert S. Sola, ROBERT S. SOLA PC, 1500 SW First Avenue, Suite 800, Portland, OR 97201; and James A. Francis, John Soumilas; and Lauren K.W. Brennan, FRANCIS MAILMAN SOUMILAS PC, 1600 Market Street, Suite 2510, Philadelphia, PA 19103. Of Attorneys for Plaintiffs.

Sarah J. Crooks, PERKINS COIE LLP, 1120 NW Couch Street, Tenth Floor, Portland, OR 97209; Robert T. Quackenboss, Kevin J. White, and Evangeline C. Paschal, HUNTON ANDREWS KURTH LLP, 2200 Pennsylvania Avenue NW, Washington, DC 20037; and Roland M. Juarez, HUNTON ANDREWS KURTH LLP, 550 South Hope Street, Suite 2000, Los Angeles, CA 90071. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

  Named Plaintiff Bonnie Magallon brings this certified class action lawsuit alleging violations of the Fair Credit Reporting Act ("FCRA") against Defendant Robert Half International, Inc., now known as "Robert Half, Inc." Plaintiffs allege that Defendant violated FCRA by taking adverse action against candidates for employment based on the results of

consumer reports without first providing the consumer with notice and a copy of the relevant report. Plaintiffs moved for preliminary approval of the class settlement between Plaintiffs and Defendant (ECF 303), and the Court preliminarily approved the class-wide Settlement Agreement. ECF 304.[1] Now before the Court is Plaintiff's unopposed Motion for Final Approval. ECF 318. For the reasons explained below, the Court grants that motion.

## BACKGROUND

Defendant is a staffing company that connects applicants with temporary jobs. When an individual applied for temporary work through Defendant, Defendant obtained a criminal background check report on the applicant using a vendor, General Information Services ("GIS"), when the applicant self-disclosed a criminal conviction or the employer requested that a background check be performed. The background checks assigned candidates a color-coded flag of green, yellow, or red based on the information in the report and the job criteria. Plaintiffs allege that Defendant would send the files of all applicants whose background reports contain either a yellow flag or a red flag to Defendant's legal department for further review. After such review, Defendant's legal department would decide either: (1) to remove the yellow or red flag and process the employment application; or (2) to designate the applicant as "not placeable" and direct GIS to send a pre-adverse action notice to the applicant whose background report continued to have a yellow or red flag. The legal department review process would take anywhere from several days to more than two weeks to complete, and only after that review would Defendant direct GIS to send a pre-adverse action notice to the applicant. Plaintiffs contend that Defendant's regular practice of designating an applicant as "not placeable" after

---

[1] Unless otherwise indicated, all capitalized terms used in this Opinion and Order have the same meanings as defined in the Settlement Agreement, ECF 303-1.

PAGE 2 – OPINION AND ORDER GRANTING FINAL APPROVAL OF SETTLEMENT

review of background reports containing yellow or red flags but before sending pre-adverse action notices constitutes an "adverse action." As noted, the parties reached a class-wide settlement.

## DISCUSSION

### A. Settlement Class Certification

#### 1. Notice to the Class

The Court granted preliminary approval to the parties' proposed notice procedure. ECF 304. The Court is satisfied that the notice procedure was carried out according to the applicable standards. The Court finds that notice of the Agreement was given to the Settlement Class by the best means practicable under the circumstances, including emailing or mailing the Notice to Settlement Class Members and posting the Notice, Agreement, and Preliminary Approval Order on a dedicated website.

The Notice provided Settlement Class Members with all required information including, among other things: (1) a summary of the Action and the claims asserted; (2) a clear definition of the Settlement Class; (3) a description of the material terms of the Agreement; (4) the fact that no affirmative action was needed to receive the benefit of class membership, but notice that Settlement Class Members could opt out of the Settlement Class; (5) an explanation of Settlement Class Members' opt-out rights, the date by which Settlement Class Members must opt out, and information about how to do so; (6) explaining the release of claims should Settlement Class Members choose to remain in the Settlement Class; (7) instructions about how to object to the Agreement and the deadline for Settlement Class Members to submit any objections; (8) instructions about how to object to the requested attorney's fees, expenses, and service awards and the deadline for Settlement Class Members to submit any objections; (9) the date, time, and location of the final approval hearing; (10) the internet address for the settlement

website from which Settlement Class Members could obtain more information on the Agreement; (11) contact information for the Settlement Administrator and the Court; and (12) information about how Class Counsel and the class representative would be compensated. The notice is sufficient. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (reaffirming that a class notice need only "generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard" (alteration in original) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009))).

The form and method of notifying the Settlement Class fairly and adequately advised Settlement Class Members of all relevant and material information about the Action and the proposed Agreement. The Court finds that the notice satisfies the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure.

### 2. Certified Class

The Court previously granted a motion for class certification, certifying a class, ECF 46, which the Court later edited without objection from the parties. The operative definition of the class and the class period is:

> All natural persons residing in the United States (including territories and other political subdivisions) who: (i) applied for temporary employment placement through Defendant; (ii) about whom Defendant obtained a consumer report for employment purposes from General Information Services, Inc. between October 1, 2010, and November 30, 2017; (iii) the consumer report contained either a red flag or a yellow flag; and (iv) Defendant determined the applicant was "not placeable."

The class definition also excludes any individuals who signed Defendant's arbitration acknowledgment form and did not opt out of the arbitration agreement within 30 days. In addition, the parties have stipulated that "[t]he class as defined by the court in this case is

PAGE 4 – OPINION AND ORDER GRANTING FINAL APPROVAL OF SETTLEMENT

comprised of 2,363 class members." ECF 262 at 2. Defendant later moved to decertify the class, ECF 273, which the Court denied on September 13, 2024. ECF 287.

## B. Settlement Approval

### 1. General Standards

Under Rule 23(e) of the Federal Rules of Civil Procedure, "[t]he claims, issues, or defenses of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval." "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Thus, to approve a class action settlement, a court must find that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Lane*, 696 F.3d at 818.

The settlement must be considered as a whole, and although there are "strict procedural requirements on the approval of a class settlement, a district court's only role in reviewing the substance of that settlement is to ensure it is 'fair, adequate, and free from collusion.'" *Lane*, 696 F.3d at 818-19 (quoting *Hanlon*, 150 F.3d at 1027). A court must consider whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).

In addition, the Ninth Circuit has articulated the following factors to guide a court's review:

> [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

PAGE 5 – OPINION AND ORDER GRANTING FINAL APPROVAL OF SETTLEMENT

*Lane*, 696 F.3d at 819. Further, courts within the Ninth Circuit "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez*, 563 F.3d at 965.

Class action settlements involve "unique due process concerns for absent class members who are bound by the court's judgments." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1168 (9th Cir. 2013) (cleaned up). The Ninth Circuit has recognized, however, that "[j]udicial review also takes place in the shadow of the reality that rejection of a settlement creates not only delay but also a state of uncertainty on all sides, with whatever gains were potentially achieved for the putative class put at risk." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Thus, there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai*, 926 F.3d at 556 (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)).

### 2. Litigation Strategy Factors

The Court begins by analyzing the litigation strategy focused factors—the strength of Plaintiffs' case; the risk, expense, complexity, and likely duration of future litigation; and the risk of maintaining class action status throughout trial. Plaintiffs contend that although they believe their claims are meritorious, proceeding with this litigation would be risky. Plaintiffs note that, absent a settlement, this case would proceed to a three-week jury trial involving a significant expenditure of resources by the parties and the Court and involving inherent risks and uncertainty. Even if Plaintiffs secured an award for the Settlement Class Members at trial, Defendant may challenge such award through post-trial motions and appeal, involving additional hurdles and litigation that would be expensive and time-consuming. Further, although the Court denied Defendant's motion for decertification of the class, post-trial motions could include another motion for decertification, which may also be subject to lengthy appeals. Thus, given the

parties' uncertainty of the outcome and the complexity of this case, these litigation strategy factors favor approval of the Settlement Agreement.

### 3. Amount Offered in Settlement

The Settlement amount is $2,258,909.85, consisting of an award of $955.95 to each Settlement Class Member. This amount is at the high end of the available statutory damages of $1,000 per class member, and courts have approved settlements for similar claims at much lower amounts. *See, e.g.*, *White v. RBD Staffing, Inc.*, 2017 WL 11633452, at *4-5 (C.D. Cal. July 11, 2017) (approving settlement of § 1681b(b)(3) claim providing $270.95 per class member); *Santos v. Jaco Oil Co.*, 2015 WL 5732829, at *9 (E.D. Cal. Sept. 29, 2015) (approving settlement award of $50 per class member for one group of class members and $350 to $375 per class member for the other group of class members in § 1681b(b)(3) case). Based on these facts, the amount offered in the Settlement Agreement is adequate and supports approval of the Settlement.

### 4. Extent of Discovery Completed

Formal discovery is not required before a class action settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239-40 (9th Cir. 1998). Rather, "[a]pproval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013). This case settled only weeks before trial and after more than a decade of litigation, and the parties assert that they have a strong understanding of the strengths and weaknesses of their positions. This factor thus supports approval of the Settlement.

### 5. Experience and Views of Counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec.*

*Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). While counsel's views are instructive, they do not entitle the settlement to a presumption of fairness. *See Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019). The Court is satisfied that Class Counsel has extensive experience litigating FCRA class actions. Thus, Class Counsel's recommendation that the Settlement is fair, reasonable, and adequate favors approval.

### 6. The Presence of a Governmental Participant

The Class Action Fairness Act ("CAFA") provides in relevant part:

> Not later than 10 days after a proposed settlement of a class action is filed in court, each defendant . . . shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement[.]
>
> * * *
>
> An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under subsection (b).

28 U.S.C. § 1715(b), (d). Defendant provided notice of the proposed settlement to the Attorneys General of states in which class members reside, as well as to the U.S. territories and the District of Columbia's corporate counsel. No state or federal official has objected to the Settlement or otherwise become involved in the case. This factor therefore favors approval.

### 7. Reaction of the Class Members to the Settlement

No Settlement Class Members objected to the Settlement[2] and two Settlement Class Members have opted out. ECF 326-1 ¶¶ 3-4. The lack of objections and the low number of opt-outs show that Settlement Class Members favor the Settlement. This factor favors approval.

---

[2] One Settlement Class Member originally objected, but then withdrew their objection and replaced it with an opt-out request. ECF 326-1 ¶ 3.

PAGE 8 – OPINION AND ORDER GRANTING FINAL APPROVAL OF SETTLEMENT

### 8. Evidence of Collusion

When the settlement agreement is negotiated before formal class certification, as in this case, a court should engage in "an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e)." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). The Ninth Circuit has identified three signs of collusion: (1) class counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but counsel is amply awarded; (2) the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds without objection by a defendant; and (3) the parties arrange for payments not awarded to revert to a defendant rather than to be added to the class fund. *Id.* at 947.

Class Counsel seeks an award of $4,281,278.80 in attorney's fees, which Defendant opposes. Further, the Settlement contains no "clear sailing" or reversion provisions. The Court identifies no evidence of collusion or other conflicts of interest, which favors approval.

### 9. Conclusion

The above factors support approval of the Settlement Agreement. The Court therefore finds that the Settlement is fair, reasonable, and adequate.

## C. Class Representative Incentive Awards

Plaintiffs and Class Counsel request a service award in the amount of $15,000 to the named Plaintiff. Plaintiffs argue that this award should be allowed because as the person who brought the case and the sole class representative, she has expended substantial time and effort. She sat for deposition and "worked closely with Class Counsel at all stages of the case," which has stretched on for more than a decade. Further, Plaintiffs contend that the named Plaintiff is providing a broader release to Defendant than other Settlement Class Members.

"Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit." *Radcliffe*, 715 F.3d at 1163. They are often taken from a common settlement fund. *Id.* Although incentive awards are "fairly typical in class action cases," *Rodriguez*, 563 F.3d at 958, they should be scrutinized carefully to ensure "that they do not undermine the adequacy of the class representatives," *Radcliffe*, 715 F.3d at 1163. The adequacy of class representatives can be undermined by, for example, incentive awards that are contingent on the named representatives approving the class settlement, *see id.* at 1164, or by disproportionately large incentive awards, *see Staton*, 327 F.3d at 975, 977 (reversing district court's approval of incentive awards approximately sixteen times greater than the recovery of unnamed class members). Although the requested incentive award is about fifteen times greater than that of the unnamed Settlement Class Members, the named Plaintiff has been involved in this litigation for more than a decade and has committed significant time to this case. Thus, the Court finds that the requested service award is reasonable.

## CONCLUSION

The Court GRANTS Plaintiffs' unopposed Motion for Final Approval, ECF 318. The Court approves a service award in the amount of $15,000 to the named Plaintiff.

**IT IS SO ORDERED**.

DATED this 7th day of May, 2025.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge